UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.  14-60975-CIV-DIMITROULEAS

WENDY GRAVE and JOSEPH GRAVE,

    Plaintiffs,

vs.

WELLS FARGO BANK, N.A.,

    Defendant.
_____/

## ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS

THIS CAUSE is before the Court upon Defendant Wells Fargo Bank, N.A.'s Motion to Dismiss Amended Complaint (the "Motion") [DE 25], filed herein on August 4, 2014.  The Court has carefully considered the Motion [DE 25], the Response [DE 26], and the Reply [DE 27].  The Court is otherwise fully advised in the premises.

### I.   BACKGROUND

The parties to this action are Plaintiff Wendy Grave ("W. Grave"), Plaintiff Joseph Grave ("J. Grave" and together with W. Grave, "Plaintiffs"), and Defendant Wells Fargo Bank, N.A. ("Defendant" or "Wells Fargo").  *See* [DE 24].  W. Grave applied for financing with Wells Fargo and offered her home as collateral.  [DE 24 ¶¶ 6-8].  Wells Fargo did not provide disclosures regarding the identity of the lender, the terms of closing, or the terms of repayment prior to closing.  [*Id.* ¶ 10].  At closing, Plaintiff signed a note and mortgage naming American Brokers Conduit ("ABC") as the Payee on the Note and the Mortgagee on the Mortgage.  [*Id.* ¶ 12].  ABC, however, is not a registered business entity anywhere in the United States but is a fictitious name used by multiple entities in multiple states.  [*Id.* ¶¶ 13-14].  Within two days after

1

the closing, the mortgage was assigned twice and was then transferred again by way of merger. [*Id.* ¶ 15].  Through forensic analysts, experts, and an investigation into title and securitization, Plaintiffs discovered that ABC did not fund the loan and, therefore, was not the lender.  [*Id.* ¶ 16].

While W. Grave's loan was current, she made a telephone inquiry to Wells Fargo about the possibility of a modification based on a faulty appraisal of the property at origination and personal circumstances.  [*Id.* ¶ 27].  She was told that there was no program under which modification could be processed unless the borrower was 90 days behind in his/her payments. [*Id.* ¶ 30].  This statement was untrue, as HAMP, HARP, and other programs allow for modifications without the necessity of withholding payments.  [*Id.*].  Instead, the "90 days past due" was likely a requirement of Wells Fargo's "in-house" modification, which Wells Fargo preferred to HAMP modifications because in-house modifications carried higher interest rates. [*Id.* ¶ 35].  Wells Fargo knew that its statement was false and that W. Grave would rely upon the statement, forcing her into an in-house modification or foreclosure.  [*Id.* ¶ 37].  That process would then allow Wells Fargo to earn more money.  [*Id.*].

In reliance upon Wells Fargo's false representations, W. Grave stopped paying for 90 days.  [*Id.* ¶ 38].  On the 91st day, as instructed by Wells Fargo, she applied for a loan modification.  [*Id.* ¶ 39].  Wells Fargo subsequently told W. Grave that she was in default and that the "investor" had turned down the offer of modification.  [*Id.* ¶ 40].

On or about April 2, 2012, Wells Fargo filed for foreclosure of the property.  [*Id.* ¶ 17]. In a state of panic and confusion, W. Grave entered into a contract to sell the home for $250,000. [*Id.* ¶ 42].  The note balance was less than $150,000.  [*Id.*].  If the contract had closed, the creditor would have been paid in full, and the second mortgage would have been settled as well.

2

[*Id.*].  Under the terms with the buyers, W. Grave would have had the option to rent the property and repurchase it at a later time in cash or with financing from a third party.  [*Id.* ¶ 43].  The buyers applied for and received approval for financing and had sufficient funds to pay the balance of the purchase price.  [*Id.* ¶ 45].  They paid for the appraisal, the processing of the application, and any other expenses in anticipation of closing with W. Grave.  [*Id.*].

W. Grave repeatedly asked for estoppel information from Wells Fargo, as is standard for all real estate transactions.  [*Id.* ¶ 44].  Wells Fargo and its counsel refused to answer the request, thus interfering with W. Grave's right to reinstate, right of redemption, and right to close the contract with the buyers.  [*Id.*].  As a direct and proximate result of Wells Fargo's refusal to provide estoppel information, W. Grave has incurred additional damages, attorneys' fees, and court costs because the contract for the sale of the home has expired and the prospective buyers have purchased other investment property.  [*Id.* ¶¶ 44, 46].

On April 2, 2014, Plaintiffs brought this action in the Circuit Court of the Seventeenth Judicial Circuit in and for Broward County Florida.  [*Id.*]   On July 11, 2014, the Court issued an Order Granting in Part and Denying in Part Defendant's Motion to Dismiss [DE 23].  On July 21, 2014, Plaintiffs filed the First Amended Complaint, asserting the following three causes of action: (1) Count I for breach of statutory duties and obligations under the mortgage contract; (2) Count II for breach of fiduciary duty; and (3) Count III for fraudulent misrepresentation.  *See* [DE 24 ¶¶ 48-75].  Through the instant Motion [DE 25], Wells Fargo, pursuant to Rules 12(b)(6) and 9(b) of the Federal Rules of Civil Procedure (the "Rules"), seeks dismissal of Counts I and III.

## II.     STANDARD OF REVIEW

### A.     Rule 12(b)(6)

To adequately plead a claim for relief, Rule 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  Under Rule 12(b)(6), a motion to dismiss should be granted only if the plaintiff is unable to articulate "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (citing *Twombly*, 550 U.S. at 556). When determining whether a claim has facial plausibility, "a court must view a complaint in the light most favorable to the plaintiff and accept all of the plaintiff's well-pleaded facts as true." *Am. United Life Ins. Co. v. Martinez*, 480 F.3d 1043, 1066 (11th Cir. 2007).

However, the court need not take allegations as true if they are merely "threadbare recitals of a cause of action's elements, supported by mere conclusory statements." *Iqbal*, 129 S. Ct. at 1949.  "Mere labels and conclusions or a formulaic recitation of the elements of a cause of action will not do, and a plaintiff cannot rely on naked assertions devoid of further factual enhancement." *Franklin v. Curry*, 738 F.3d 1246, 1251 (11th Cir. 2013).  "[I]f allegations are indeed more conclusory than factual, then the court does not have to assume their truth." *Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1337 (11th Cir. 2012).  In sum, "[t]he plausibility standard 'calls for enough fact to raise a reasonable expectation that discovery will reveal evidence' of the defendant's liability." *Miyahira v. Vitacost.com, Inc.*, 715 F.3d 1257, 1265 (11th Cir. 2013) (quoting *Twombly*, 550 U.S. at 556).

B.     **Rule 9(b)**

Rule 9(b) provides that "in alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). "Rule 9(b) is satisfied if the complaint sets forth (1) precisely what statements were made in what documents or oral representations or what omissions were made, and (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) same, and (3) the content of such statements and the manner in which they misled the plaintiff, and (4) what the defendants obtained as a consequence of the fraud." *Ziemba v. Cascade Int'l, Inc.*, 256 F.3d 1194, 1202 (11th Cir. 2001) (internal quotations omitted). The heightened pleading requirements of Rule 9(b) apply to claims for fraudulent concealment. *Aprigliano v. Am. Honda Motor Co., Inc.*, 979 F. Supp. 2d 1331, 1342-43 (S.D. Fla. 2013).

### III.   DISCUSSION

A.   **Count I:  Breach of Statutory Duties and Obligations Under the Mortgage Contract**

In Count I, Plaintiffs allege, *inter alia*, the following:

> By failing to provide the information as was required by Florida Statute 701.04, Wells Fargo breached its statutory duty that allow [sic] for a loan to be paid off prior to its maturity, and, when in a foreclosure action, before the sale pursuant to the borrower's right to redeem. The Defendant is pursuing a foreclosure proceeding in Broward County Circuit Court, Case No.: CACE 12-009341, and it breached its statutory duty and mortgage contractual duty to allow Wendy Grave, Plaintiff herein, to pay off her mortgage and exercise her right of redemption.

[DE 24 ¶ 49]. Additionally, Plaintiffs rely on allegations that they had buyers in place to purchase the home but that the sale failed to close solely because "Wells Fargo refused to provide estoppel information and did so without any justifiable or good reason." [*Id.* ¶¶ 50-52].

The Court finds that Plaintiffs have failed to state a claim for violation of Fla. Stat. §

5

701.04.  The relevant provision provides that "[w]ithin 14 days after receipt of the written request of a mortgagor . . . the holder of a mortgage shall deliver or cause the servicer of the mortgage to deliver to the person making the request . . . an estoppel letter setting forth the unpaid balance of the loan secured by the mortgage." Fla. Stat. § 701.04(1).  The Court has found no indication within the statute or case law that a cause of action exists for violation of that particular provision of § 701.04.[1]  And Plaintiffs cite no authority in support of such a cause of action.  Accordingly, the Court concludes that Plaintiffs have not stated a valid claim for violation of § 701.04.  *See, e.g., Washington Mut. Bank, F.A. v. Shelton*, 892 So. 2d 547, 550 (Fla. 2d DCA 2005) ("[A] civil action arising out of the provisions of Section 701.04 . . . is necessarily confined to one brought by a person who has fully paid an outstanding mortgage, lien or judgment, but despite such payment is compelled to sue to obtain a satisfaction in order, in the usual case, to remove the cloud on the title caused by the previously recorded mortgage, lien or judgment." (internal quotation marks omitted)).

Moreover, even if a cause of action did exist, it would require Plaintiffs to establish that they sent a written request to the holder of the mortgage.  Plaintiffs do not allege that they sent a *written* request to Wells Fargo, and they negate that Wells Fargo was the lender or an authorized servicer of the mortgage.  *See* [DE 24 ¶ 57] ("Wells Fargo knew that it was not the lender even when it said it was, and knew that it was not an authorized servicer.").  Thus, Plaintiffs' claim under § 701.04 fails for these independent reasons as well.

---

[1] The Court acknowledges that causes of action exist under Fla. Stat. § 701.04(2).  *See, e.g., Kalb v. Nack Holding, LLC*, 79 So. 3d 175, 176 (Fla. 3rd DCA 2012) ("Nack Holding prevailed in its claim that Kalb violated Section 701.04, Florida Statutes (2010), which requires timely recording of satisfactions of judgment.").  That particular provision--§ 701.04(2)—specifies that "[i]n the case of a civil action arising out of this section, the prevailing party is entitled to attorney fees and costs," whereas the provision that Plaintiffs' rely upon—701.04(1)—contains no similar language as to a "civil action."

6

**B.     Count VIII: Fraudulent Misrepresentation**

Plaintiffs make a claim for fraudulent misrepresentation. In support, Plaintiffs, allege that Wells Fargo, in order to lure Plaintiffs into defaulting on their mortgage, knowingly made false statements regarding the qualifications for a HAMP modification. *See* [DE 1-5 ¶¶ 97-101]. The Court finds that Plaintiffs have adequately stated a claim for fraudulent misrepresentation.

"Under Florida law, the elements of fraud are: (1) a false statement concerning a specific material fact; (2) the maker's knowledge that the representation is false; (3) an intention that the representation induces another's reliance; and (4) consequent injury by the other party acting in reliance on the representation." *Horne v. Social Sec. Admin.*, 359 F. App'x 138, 145 (11th Cir. 2010) (citing *Lopez–Infante v. Union Cent. Life Ins. Co.,* 809 So.2d 13, 15 (Fla. 3d DCA 2002)). "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b).

Wells Fargo, once again, contends that Plaintiffs do not meet the heightened pleading standard of Rule 9(b). Wells Fargo asserts that Plaintiffs do not identify who at Wells Fargo made the false statements or the time(s) and place(s) that the alleged statements were made. Additionally, Wells Fargo asserts that the alleged facts do not demonstrate damages which arose directly from the alleged fraud.

The Court disagrees. Plaintiffs allege that Wells Fargo, during a phone call in October 2011, explicitly stated to W. Grave that they could not offer a loan modification until W. Grave was ninety (90) days behind. [DE 24 ¶ 69]. Wells Fargo also stated that W. Grave should submit the modification forms after ninety (90) days. *See* [*id.*]. Plaintiffs further allege that Wells Fargo knowingly made those false statements in order to induce Plaintiffs into a potential foreclosure or in-house modification. *See* [DE 24 ¶ 73]. Finally, Plaintiffs allege that W. Grave,

7

in response to Wells Fargo's false representation, waited ninety (90) days before submitting modification forms and subsequently incurred damages through late fees, delinquency and default charges, and increased accrued interest.  *See* [DE 24 ¶¶ 70, 74].

These allegations adequately describe the time, place, content, and consequences of the purportedly false statements made by Wells Fargo.  Additionally, Plaintiffs need not identify the exact Wells Fargo employee who was on the telephone call or parrot the verbatim statements made by that employee.  Rather, Plaintiffs' allegations must provide Wells Fargo with adequate notice of the basis for the fraudulent misrepresentation claim.  The allegations meet that standard.  Thus, Plaintiffs have satisfied Rule 9(b)'s pleading requirements and have stated a valid claim for fraudulent misrepresentation.

### IV.   CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1.   The Motion [DE 25] is **GRANTED IN PART AND DENIED IN PART**; and

2.   Count I is hereby **DISMISSED WITH PREJUDICE**.

**DONE AND ORDERED** in Chambers at Ft. Lauderdale, Broward County, Florida, this 5th day of September, 2014.

*/s/ William P. Dimitrouleas*
WILLIAM P. DIMITROULEAS
United States District Judge

Copies provided to:

Counsel of record

8